JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
**MAIER GUTIERREZ AYON**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone:  702.629.7900
Facsimile:  702.629.7925
E-mail:      jag@mgalaw.com
               djb@mgalaw.com

*Attorneys for Plaintiff Lisa Marie Bailey*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LISA MARIE BAILEY, individually, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| AFFINITYLIFESTYLES.COM, INC. d/b/a REAL ALKALIZED WATER, a Nevada corporation; DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive, | |
| Defendants. | |

### COMPLAINT WITH JURY DEMAND

Plaintiff LISA MARIE BAILEY ("Plaintiff"), by and through her attorneys of record, the law firm MAIER GUTIERREZ AYON, hereby demands a trial by jury and complains and alleges against the above named Defendant, AFFINITYLIFESTYLES.COM, INC. d/b/a REAL ALKALIZED WATER, a Nevada corporation; DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive (collectively, "Defendant" or "Real Water") as follows:

### JURISDICTION, VENUE AND LEGAL BASIS FOR THIS ACTION

1.      This Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*



1

*seq.*

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since "a substantial part of the events or omissions giving rise to the claim[s] occurred" in Nevada.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4.      This civil action is brought by Plaintiff pursuant to federal common and statutory law.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5.      From about April 4, 2016 until about June 25, 2016, Defendant subjected Plaintiff to discrimination based on religion, sex, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*.

6.      From about April 4, 2016 until about June 25, 2016, Defendant subjected Plaintiff to discrimination based on her disability in violation of Title I of the Americans with Disabilities Act Amendments Act (ADAAA).

7.      From about April 4, 2016 until about June 25, 2016, Defendant subjected Plaintiff to discrimination based on her age in violation of the Age Discrimination in Employment Act (ADEA).

8.      From about April 4, 2016 until about June 25, 2016, Defendant violated the Equal Pay Act of 1963 (EPA).

9.      Thereafter, on or about June of 2016, Plaintiff filed a complaint of discrimination with the Nevada Equal Rights Commission ("NERC").  On or about August 23, 2016, NERC filed Plaintiff's charge with the United States Equal Employment Opportunity Commission ("EEOC"). This timely filing with the EEOC fulfilled her obligation to initiate an administrative claim before seeking review in this Court.

10.      In Plaintiff's EEOC filing, Plaintiff alleged facts demonstrating that Defendant knowingly subjected Plaintiff to discriminatory treatment based on religion, age, sex, disability, and equal pay.

11.      On or about November 7, 2016, the EEOC issued Plaintiff a Notice of Right to Sue Letter, stating that she would have within 90 days of receipt of that letter to file a lawsuit.

12.      Accordingly, Plaintiff has met all administrative prerequisites to bring this lawsuit.



**PARTIES**

13.  Plaintiff LISA MARIE BAILEY is, and at all times pertinent hereto was, a resident of Clark County, Nevada.

14.  Upon information and belief, defendant AFFINITYLIFESTYLES.COM, INC. d/b/a REAL ALKALIZED WATER, is, and at all times pertinent hereto was, a Nevada corporation authorized to do business in Clark County, Nevada.

15.  Defendant sells bottled drinking water using the "Real Water" brand.

16.  The true names and capacities, whether individual, corporate, associate, partnership or otherwise, of the Defendants herein designated as DOES I through X AND ROE CORPORATIONS I through X, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will seek leave of the Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further seek leave to join said Defendant in these proceedings.

**GENERAL ALLEGATIONS**

**Defendant Hires Plaintiff and Imposes Religious Materials on Her**

17.  On or around April 4, 2016, Defendant hired Plaintiff as a "Human Resources Director" in the company's Las Vegas office.

18.  On or around the day Plaintiff was hired, Plaintiff met Brent Jones, Defendant's founder and President, who raised the subject of religion by informing Plaintiff that he is a Scientologist.  Plaintiff indicated that she had no issue with that, as long as he had no issue with her practicing the Mormon religion.  Mr. Jones told Plaintiff he had no issue and that she was hired.

19.  However, after Plaintiff was hired, Defendant forced Plaintiff to watch several videos with religious undertones, including "The Secret" and "The Way to Happiness," and several others based on the Scientology religion.

20.  Defendant also offered raises for employees who participated in "optional" self-betterment courses, which included books, videos, and paperwork, many of which contained Scientology-related messages and undertones and were authored or directly based on works by Scientology founder L. Ron Hubbard.



3

21.    Some of the courses approved and disseminated by Defendant were directly promoted and/or created by the World Institute of Scientology Enterprises ("WISE"), which Defendant made no effort to conceal or explain the meaning of to its employees.

22.    According to Defendant's policies, for every "optional" course an employee viewed, the employee was entitled to a twenty-five-cent raise.

23.    Plaintiff did not expect Defendant, a business seemingly unrelated to religion, to have an established religious culture amongst its employees, much less to force new employees to watch religious videos in exchange for pay raises.

24.    Nonetheless, Plaintiff proceeded with her training and performed her work duties and courses admirably.

25.    Despite completing at least two of the "optional" self-betterment courses, Plaintiff was not given any raises, and consistently only earned $15.00 per hour while employed with Defendant.

26.    Plaintiff expressed her discomfort with the courses repeatedly to management throughout the duration of her employment, but was never given an explanation as to why Defendant imposed religious material on its employees in the workplace.

**Defendant Demotes Plaintiff Without Justification**

27.    Approximately two weeks into her employment, Defendant placed Plaintiff on paid administrative leave and then demoted Plaintiff from her position as the Human Resources Director and placed her in the position of Assistant Human Resources Director, without giving Plaintiff any reason (verbal or written) for doing so.

28.    Plaintiff's paid administrative leave ended on or around May 2, 2016.

29.    Upon information and belief, on or around Plaintiff's second day of paid administrative leave, Defendant hired someone else to take over the Human Resources Director position without notifying Plaintiff that it was doing so, even though that position was supposed to be held for Plaintiff.

30.    Upon returning work on or around May 2, 2016, Plaintiff was informed by Defendant that the Human Resources Director position had been filled while she was out, and that she was now going to be the Assistant Director of Human Resources, with the same rate of pay at $15.00 per hour.

31.    Plaintiff's position as Human Resources Director was replaced by Frank Consiglio, a



4

shareholder of Defendant who had less experience than Plaintiff in the human resources field.

32.     Despite Mr. Consiglio's lack of experience, Defendant started Mr. Consiglio's wages at $20.00 per hour as the Human Resources Director, even though Plaintiff only started with $15.00 for the exact same position when she was initially hired, and even though Mr. Consiglio was responsible for the exact same tasks and duties Plaintiff was responsible for during her tenure as the Human Resources Director.

33.     Wanting to make the best of a bad situation, Plaintiff agreed to the demotion because Defendant promised her in writing that the ultimate goal was for Plaintiff to be offered the Human Resources Director position.

**Plaintiff Begins to Feel Alienated Based on Her Religious Beliefs**

34.     On or around May of 2016, Defendant put Plaintiff in charge of signing up Defendant employees for the various mandatory and "optional" courses, many of which contained Scientology-related values, philosophies, and undertones.

35.     On numerous occasions, Plaintiff relayed her discomfort with Defendant's imposition of religious videos and teachings in the workplace to her superiors, including but not limited to her direct supervisors Mr. Consiglio, Brent Jones, and Blain Jones, on or around June 14, 2016, but nothing was ever done to address the problem.

36.     As time progressed, Plaintiff's co-workers began to interact differently with her, and the workplace environment became extremely unpleasant and unbearable.

37.     For example, Mr. Consiglio would often refer to Plaintiff as a "Jack Mormon," which is a derogatory term that insinuates Plaintiff is not a genuine or strictly-observant follower of the Mormon religion.

38.     Plaintiff felt alienated by many of the other employees because many of them held the same religious beliefs, and clearly did not approve of her choice to not participate or convert to Scientology like a few other Defendant employees had done since their employment with Defendant began.

39.     Plaintiff performed her work while attempting to ignore the hostile nature of her co-workers and superiors.

**Defendant Refuses to Accommodate Plaintiff's Disability and Instead Terminates Her**

40.     While employed with Defendant, Plaintiff suffered from chronic depression, anxiety, and Attention-Deficit Hyperactivity Disorder (ADHD), which substantially limited her major life activities of interacting with others at work.

41.     Plaintiff was open and forthcoming about her medical disabilities to Defendant, as she informed her direct supervisor, Mr. Consiglio (along with other Defendant employees she worked with) that her chronic and long-lasting ADHD-related disability prevents her from interacting with others at work, and that she needed to work with the door shut so that she would not have any interruptions.

42.     Depression and anxiety, when combined with Plaintiff's ADHD, substantially limited Plaintiff's ability to work under normal circumstances.

43.     At first, Defendant acknowledged Plaintiff's disability and seemed to accommodate Plaintiff's request for barriers to be put in place to keep her from being interrupted, as Mr. Consiglio closed Plaintiff's door after she told him about her disability in May of 2016.

44.     However, Defendant's position drastically changed course in June of 2016, after Plaintiff became eligible for medical benefits and needed medical time off in order to tend to her ADHD, anxiety, and depression.

45.     Plaintiff had to wait until June of 2016 to receive her medical benefits because Defendant let its medical insurance benefits coverage lapse for four months.

46.     By June of 2016, Plaintiff's symptoms stemming from her medical disability had become exacerbated because of her extreme discomfort at having to promote and disseminate Scientology-related teachings on behalf of the company.  Plaintiff found that she was suffering at work and with each day it became harder for her to focus without socially withdrawing and substantially limiting her communications with co-workers.

47.     Accordingly, after receiving notice that she was eligible for medical benefits in early June of 2016, Plaintiff called her doctor in order to schedule an appointment so that she could acquire the medication she needed for her ADHD, panic attacks, anxiety, and depression in order to better herself and her health.



6

48.     Plaintiff booked a medical appointment for the earliest date available, but unfortunately there were not any immediate openings for the month of June of 2016.

49.     Although Plaintiff attempted to get through the remainder of June of 2016 without incident, she found that her disability prevented her from doing so, as the ADHD, compounded with the anxiety and depression, consumed Plaintiff and substantially limited her ability to work by rendering her unable to effectively communicate and interact with others at work.

50.     On or around June 9, 2016, Plaintiff's symptoms stemming from her disability had considerably worsened.  Plaintiff was afraid to leave her apartment, talk to anyone, or even get out of bed.  Unable to go into work, Plaintiff informed her supervisor, Mr. Consiglio, via text message that she was ill and would not be working that day.

51.     Mr. Consiglio's immediate response to Plaintiff's request for a day off was to accuse Plaintiff of taking the day off to look for another job, which she denied.

52.     After a few days off of work, Plaintiff's condition had not abated.  When Plaintiff informed Mr. Consiglio that she would need time off going into the next week beginning June 13, 2016, Mr. Consiglio demanded that Plaintiff provide him with a new doctor's note every three days until she came back to work.

53.     When Plaintiff objected to Mr. Consiglio's doctor's note demand by informing him that she was not able to book a medical appointment until August of 2016 but that she would keep calling the doctor's office to try to get in sooner, Mr. Consiglio ordered her to "go to an urgent care."

54.     In fear of losing her job, Plaintiff then went to an urgent care once every three days so that she could get a doctor's note to turn into work.  This process was extremely stressful and only worsened Plaintiff's condition.

55.     On June 14, 2016, after Defendant learned that Plaintiff had been to urgent care for treatment, Mr. Consiglio asked Plaintiff via text message "***What was the diagnosis to be out a whole week???***" which made Plaintiff extremely uncomfortable, as it intruded on her medical privacy.

56.     Feeling like she had to explain her medical situation once again, Plaintiff emailed Mr. Consiglio, Brent Jones, and Blane Jones on June 14, 2016, reiterating that her diagnosis was due to her ADHD, depression, and anxiety, which had become worse due to the work-related issues she was



7

going through, including but not limited to the Scientology-related courses.

57.     While Plaintiff was out on medical leave, Mr. Consiglio began demanding that Plaintiff give him her work passwords and various course files.  Plaintiff refused to give Mr. Consiglio her email and computer passwords, as she did not feel comfortable doing so until speaking with upper management, especially while she was still employed with Defendant.

58.     Despite being on a medical leave of absence and providing a doctor's note, Mr. Consiglio issued Plaintiff a written warning on June 14, 2016 for attendance.

59.     Plaintiff did not understand why she was receiving any kind of disciplinary action during her medical time off from work.

60.     On or about June 25, 2016, Defendant terminated Plaintiff's employment without warning or any kind of notice.

61.     On the day that Plaintiff was terminated, Defendant asked Plaintiff to return the keys she used for the office.  Once Plaintiff stopped by to return the keys, she saw Mr. Consiglio in the parking lot and asked him when she would be able to come back to work, to which Mr. Consiglio responded "You no longer work here."

62.     Thereafter, Defendant filled Plaintiff's position with Shawna Sullivan, who is significantly younger than Plaintiff, as Plaintiff was 47 years old at the time she worked for Defendant.

63.     The termination was not based on deficient job performance as Defendant claims.

64.     In reality, Defendant sought a reason to terminate an employee based on her differing religious views, her disabled condition, her age, and her equal pay demands.

**Defendant's Prior Discriminatory Conduct**

65.     Prior to this incident, Defendant was on notice that its establishment subjected employees to discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act.

66.     Defendant has already been sued for religious discrimination at least once before by another former employee who also claims to have suffered adverse actions after refusing to participate in Defendant's "optional" religious-based coursework.

67.     Defendant's discriminatory actions are consistent with a pattern and practice of

1   religious discrimination that subjects Defendant to punitive damages.

2                          **FIRST CLAIM FOR RELIEF**

3              **Violation of Title VII of the Civil Rights Act; 42 U.S.C § 2000e *et. seq*.**

4                          **(Unlawful Employment Practice)**

5          68.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the

6   complaint as through fully set forth herein, and incorporates the same herein by reference.

7          69.     Defendant breached its obligation to provide a workplace free from discrimination and

8   hostility based on religion.

9          70.     Defendant breached this obligation by requiring employees to watch Scientology-

10  themed videos and attend Scientology-themed seminars, by disfavoring employees who refused to do

11  so because they did not share the religious beliefs that Defendant promoted, and by failing to act after

12  Plaintiff notified management of this discriminatory behavior.

13         71.     Defendant discriminated against Plaintiff by subjecting her to, among other

14  discriminatory acts, loss of compensation and termination, while other similar situated employees

15  who did share Defendant's promoted religious beliefs and who did submit to Defendant's religiously-

16  motivated demands without complaint were not exposed to the same discriminatory conduct.

17         72.     Defendant engaged in an unlawful employment practice when its supervisors

18  repeatedly attempted to coerce Plaintiff into participating in religious programs (which had no relation

19  to the company's work and which Defendant knew were inconsistent with Plaintiff's beliefs), and

20  even leveraged them with pay raises.

21         73.     Defendant conditioning pay raises on completing religious programs constitutes an

22  unlawful employment action because it discriminates against employees who do not hold those

23  religious beliefs.

24         74.     Defendant's discrimination and retaliation based on religion deprived Plaintiff of

25  employment opportunities and adversely affected her status as an employee.

26         75.     As a result of Defendant' actions, Plaintiff has suffered lost wages, mental anguish,

27  emotional distress, inconvenience, and loss of enjoyment of life.

28  / / /

9

## SECOND CLAIM FOR RELIEF

### Violation of Title VII of the Civil Rights Act; 42 U.S.C § 2000e *et. seq*.

### (Intentional Discrimination – Disparate Treatment)

76.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as through fully set forth herein, and incorporates the same herein by reference.

77.     Defendant deprived Plaintiff of the enjoyment of all benefits, privileges, terms and conditions of the employment relationship by subjecting Plaintiff to unlawful disparate treatment based on religion at her place of employment.

78.     Defendant discriminated against Plaintiff by subjecting her to, among other discriminatory acts, loss of compensation and termination, while other similarly-situated employees who did share Defendant's promoted religious beliefs and who did submit to Defendant's religiously-motivated demands were not exposed to the same discriminatory conduct.

79.     Defendant conditioning pay raises on completion of religious Scientology programs constitutes unlawful disparate treatment, as it discriminates against employees who do not hold those religious beliefs.

80.     Defendant knew that Plaintiff did not share the religious beliefs it promoted and intentionally treated her differently for this reason.

81.     Defendant's actions were taken with malice and/or with reckless indifference to Plaintiff's federally protected rights.

82.     As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, emotional distress, inconvenience and loss of enjoyment of life.

83.     Plaintiff is entitled to recover compensatory damages due to Defendant engaging in unlawful discrimination.

84.     Plaintiff is entitled to recover punitive damages because Defendant acted with reckless indifference to federally protected rights of aggrieved Plaintiff when Defendant failed to rectify or even acknowledge the unlawful behavior.

85.     It has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

### THIRD CLAIM FOR RELIEF

**Violation of Title VII of the Civil Rights Act; 42 U.S.C § 2000e *et. seq*.**

**(Intentional Discrimination – Hostile Work Environment)**

86.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as through fully set forth herein, and incorporates the same herein by reference.

87.     Defendant deprived Plaintiff of the enjoyment of all benefits, privileges, terms and conditions of the employment relationship by subjecting Plaintiff to a hostile work environment.

88.     Defendant subjected Plaintiff to a hostile work environment by showing blatant disfavor towards her in comparison to other employees who shared the religious beliefs Defendant promoted and submitted to Defendant's demands to participate in Scientology-themed programs and activities without complaint.

89.     Defendant also subjected Plaintiff to a hostile work environment by allowing Plaintiff's coworkers to treat her unfavorably because of her refusal to participate in all of the Scientology-themed activities and her decision to voice her opinions against the activities.

90.     Specifically, Plaintiff's co-workers interacted differently with Plaintiff because of her extreme reluctance to participate in any of the Scientology-themed activities, and the workplace environment became extremely unpleasant.

91.     Plaintiff's co-workers also ridiculed her for practicing Mormonism, which made her feel like her religion was not equally respected just because it was the same religion practiced by Defendant's owner Brent Jones and various other members of upper-management, who all practice Scientology.

92.     Plaintiff felt alienated by many of the other employees because many of them held the same religious beliefs, and clearly did not approve of Plaintiff's decision to voice her opinions against the Scientology-themed activities.

93.     Defendant maintained a hostile work environment by failing to take remedial action after Plaintiff notified management of Defendant's unlawful behavior.

94.     Defendant's actions were taken with malice and/or with reckless indifference to Plaintiff's federally protected rights.



95.     As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, emotional distress, inconvenience and loss of enjoyment of life.

96.     Plaintiff is entitled to recover compensatory damage due to the Defendant engaging in unlawful discrimination.

97.     Plaintiff is entitled to recover punitive damages because Defendant acted with reckless indifference to federally protected rights of aggrieved Plaintiff when the Defendant failed to rectify or even acknowledge the unlawful behavior.

98.     It has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

## FOURTH CLAIM FOR RELIEF

**Violation of Title VII of the Civil Rights Act; 42 U.S.C § 2000e *et seq*.**

**(Retaliation)**

99.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as through fully set forth herein, and incorporates the same herein by reference.

100.    Defendant discriminated against Plaintiff by subjecting her to, among other discriminatory acts, loss of compensation and termination, while other similarly situated employees, who shared Defendant's promoted religious beliefs and submitted to Defendant's demands to participate in Scientology-themed programs and activities without complaint, were not exposed to the same discriminatory conduct.

101.    Plaintiff engaged in a protected activity when she expressed her opposition to Defendant's requirement that she participate in Scientology-themed activities, refusing to subject herself to religious propaganda; this is true even if the programs were not unlawful, so long as Plaintiff reasonably believed that they were, which she does.

102.    Plaintiff had the right to refuse to participate in religious, Scientology-themed activities, as the programs were not related to her work, and violated her personal religious rights.

103.    Defendant conditioning pay raises on completing religious Scientology programs was reasonably likely to deter reasonable workers from engaging in the protected activity of choosing to not participate.



104.    Defendant allowing coworkers to alienate employees who did not participate in Scientology-themed activities was also reasonably likely to deter reasonable workers from engaging in the protected activity of choosing to not participate.

105.    Defendant took an adverse employment action against Plaintiff by terminating her.

106.    Defendant deliberately targeted Plaintiff for termination because of her refusal to submit to Defendant's demands that she participate in religious, Scientology-themed activity.

107.    Defendant sought a reason to terminate Plaintiff because she had differing religious views.

108.    Mr. Consiglio hastily-composing "Non-Optimum Reports" in the weeks prior to Plaintiff's termination was clearly pretext for her termination.

109.    As a result of Defendant' actions, Plaintiff has suffered lost wages, mental anguish, emotional distress, inconvenience, and loss of enjoyment of life.

**FIFTH CLAIM FOR RELIEF**

**Nevada State Law Violation**

**(Violation of NRS 613.330 – Religious Discrimination)**

110.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein, and incorporates the same herein by reference.

111.    Defendant discriminated against Plaintiff by subjecting her to, among other discriminatory acts, loss of compensation and termination, while other similarly situated employees, who shared Defendant's promoted religious beliefs and submitted to Defendant's demands that they participate in Scientology-themed programs and activities without complaint, were not exposed to the same discriminatory conduct.

112.    As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, emotional distress, inconvenience and loss of enjoyment of life.

113.    Defendant's discrimination deprived Plaintiff of employment opportunities and adversely affected her status as an employee.

/ / /

/ / /



## SIXTH CLAIM FOR RELIEF

### Nevada State Law Violation

### (Tortious Discharge)

114.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein, and incorporates the same herein by reference.

115.    Defendant tortiously discharged Plaintiff by terminating her for reasons which violate public policy.

116.    Specifically, Defendant terminated Plaintiff because she did not share the religious beliefs that Defendant promoted and because she refused to submit to all of Defendant's demands that she participate in religious, Scientology-themed programs and activities.

117.    Defendant terminated Plaintiff for reasons severely adverse to strong and compelling public policy and the common good.

118.    Despite Plaintiff's frequent objections to Defendant's conduct, Defendant never sought to cure these violations.

## SEVENTH CLAIM FOR RELIEF

### Violation of Title I of the Americans with Disabilities Amendments Act; 42 U.S.C §§ 12101 *et seq.*

### (Disability Discrimination)

119.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein, and incorporates the same herein by reference.

120.    While employed with Defendant, Plaintiff suffered from mental and/or physical impairments consisting of chronic depression, anxiety, and Attention-Deficit Hyperactivity Disorder (ADHD),

121.    Plaintiff's impairments substantially limited her major life activities of concentrating, thinking, communicating, and interacting with others at work.

122.    Plaintiff was open and forthcoming about her medical disabilities to Defendant, as she informed her direct supervisor, Mr. Consiglio (along with other Defendant employees she worked with) that her chronic and long-lasting ADHD-related disability prevents her from interacting with



14

others at work, and that she needed to work with the door shut so that she would not have any interruptions.

123.    Plaintiff's ongoing depression and anxiety, when combined with Plaintiff's ADHD, substantially limited Plaintiff's ability to work under normal circumstances.

124.    However, Plaintiff was otherwise qualified to perform the essential functions of her job as long as she had reasonable accommodations from Defendant, which included minimal interruptions from her work.

125.    At first, Defendant acknowledged Plaintiff's disability and seemed to accommodate Plaintiff's request for barriers to be put in place to keep her from being interrupted, as Mr. Consiglio closed Plaintiff's door after she told him about her disability in May of 2016.

126.    However, Defendant's position drastically changed course in June of 2016, after Plaintiff became eligible for medical benefits and needed medical time off in order to tend to her ADHD, anxiety, and depression.

127.    By June of 2016, Plaintiff's symptoms stemming from her medical disability had become exacerbated.  She was suffering at work and with each day it became harder for her to focus without socially withdrawing and substantially limiting her communications with co-workers.

128.    Accordingly, after receiving notice that she was eligible for medical benefits in early June of 2016, Plaintiff called her doctor in order to schedule an appointment so that she could acquire the medication she needed for her ADHD, panic attacks, anxiety, and depression in order to better herself and her health.

129.    Plaintiff booked a medical appointment for the earliest date available, but unfortunately there were not any immediate openings for the month of June of 2016.

130.    Although Plaintiff attempted to get through the remainder of June of 2016 without incident, she found that her disability prevented her from doing so, as the ADHD, compounded with the anxiety and depression, consumed Plaintiff and substantially limited her ability to work by rendering her unable to effectively communicate and interact with others at work.

131.    On or around June 9, 2016, Plaintiff's symptoms stemming from her disability had considerably worsened.  Plaintiff was afraid to leave her apartment, talk to anyone, or even get out of

bed.  Unable to go into work, Plaintiff informed her supervisor, Mr. Consiglio, via text message that she was ill and would not be working that day.

132.   Mr. Consiglio's immediate response to Plaintiff's request for a day off was to accuse Plaintiff of taking the day off to look for another job, which she denied.

133.   After a few days off of work, Plaintiff's condition had not abated.  When Plaintiff informed Mr. Consiglio that she would need time off going into the next week beginning June 13, 2016, Mr. Consiglio demanded that Plaintiff provide him with a new doctor's note every three days until she came back to work.

134.   When Plaintiff objected to Mr. Consiglio's doctor's note demand by informing him that she was not able to book a medical appointment until August of 2016 but that she would keep calling the doctor's office to try to get in sooner, Mr. Consiglio ordered her to "go to an urgent care."

135.   In fear of losing her job, Plaintiff then went to an urgent care once every three days so that she could get a doctor's note to turn into work.  This process was extremely stressful and only worsened Plaintiff's condition.

136.   On June 14, 2016, after Defendant learned that Plaintiff had been to urgent care for treatment, Mr. Consiglio asked Plaintiff via text message "***What was the diagnosis to be out a whole week???***" which made Plaintiff extremely uncomfortable, as it intruded on her medical privacy.

137.   Feeling like she had to explain her medical situation once again, Plaintiff emailed Mr. Consiglio, Brent Jones, and Blane Jones on June 14, 2016, reiterating that her diagnosis was due to her ADHD, depression, and anxiety, which had become worse due to the work-related issues she was going through, including but not limited to the Scientology-related courses.

138.   While Plaintiff was out on medical leave, Mr. Consiglio began demanding that Plaintiff give him her work passwords and various course files.  Plaintiff refused to give Mr. Consiglio her email and computer passwords, as she did not feel comfortable doing so until speaking with upper management, especially while she was still employed with Defendant.

139.   Despite Plaintiff being on a medical leave of absence for her disability and providing a doctor's note, Mr. Consiglio subjected Plaintiff to the adverse action of a written warning on June 14, 2016 for attendance.

16

140.    On or about June 25, 2016, Defendant terminated Plaintiff's employment without warning or any kind of notice.

141.    Upon information and belief, Defendant subjected Plaintiff to the adverse actions of a written warning, a required doctor's note once every three days, and termination because of Defendant's perceptions of Plaintiff's limitations due to her disability.

142.    In doing the acts and omissions alleged herein, Defendant knew or should have known that its conduct was directed to a person with a disability, thereby entitling Plaintiff to recover all damages, penalties, and/or other such remedies pursuant to federal law.

143.    Defendant's actions were taken with malice and/or with reckless indifference to Plaintiff's federally protected rights.

144.    As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, emotional distress, inconvenience and loss of enjoyment of life.

145.    Plaintiff is entitled to recover compensatory damage due to the Defendant engaging in unlawful disability discrimination.

## EIGHTH CLAIM FOR RELIEF

**Violation of Title V of the Americans with Disabilities Act; 42 U.S.C §§ 12203 *et seq*.**

**(Retaliation)**

146.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein, and incorporates the same herein by reference.

147.    Plaintiff engaged in protected employee activity by requesting an accommodation for her disability.

148.    Specifically, Plaintiff reasonably requested medical time off of work to tend to her disability, which was debilitating her emotionally and mentally, until she could get in to see a professional doctor.

149.    Defendant effectively denied Plaintiff's request for an accommodation by: giving her a written warning for attendance, requiring a doctor's note once every three days, and terminating her, all in the span of weeks after Plaintiff requested her accommodation.

150.    The timing of Defendant's adverse actions establishes a causal connection between



1  Plaintiff's protected activity and the adverse actions which ultimately resulted in Plaintiff's

2  termination.

3     151.   In doing the acts and omissions alleged herein, Defendant knew or should have known

4  that its conduct was directed to a person with a disability, thereby entitling Plaintiff to recover all

5  damages, penalties, and/or other such remedies pursuant to federal law.

6     152.   Defendant's actions were taken with malice and/or with reckless indifference to

7  Plaintiff's federally protected rights.

8     153.   As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish,

9  emotional distress, inconvenience and loss of enjoyment of life.

10    154.   Plaintiff is entitled to recover compensatory damage due to the Defendant engaging in

11  unlawful disability discrimination.

12                    **NINTH CLAIM FOR RELIEF**

13                    **Nevada State Law Violation**

14       **(Violation of NRS 613.330 – Disability Discrimination)**

15    155.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the

16  complaint as though fully set forth herein, and incorporates the same herein by reference.

17    156.   Defendant discriminated against Plaintiff by subjecting her to, among other

18  discriminatory acts, loss of compensation and termination, while other similarly situated employees,

19  who did not request an accommodation for disability entailing time off of work, were not exposed to

20  the same discriminatory conduct.

21    157.   As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish,

22  emotional distress, inconvenience and loss of enjoyment of life.

23    158.   Defendant's discrimination deprived Plaintiff of employment opportunities and

24  adversely affected her status as an employee.

25                    **TENTH CLAIM FOR RELIEF**

26    **Violation of the Age Discrimination in Employment Act of 1967 – 29 U.S.C.A. § 623**

27    159.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the

28  complaint as though fully set forth herein, and incorporates the same herein by reference.



160.   At all times relevant hereto for purposes of this Complaint, Plaintiff was over 40 years old.

161.   Defendant employed a specific policy and practice which had a significantly adverse or disproportionate impact on employees 40 years of age or older.

162.   Defendant utilized Plaintiff's medical leave as a means to terminate her employment and fill her position with a younger employee.

163.   Other employees of Defendant over 40 years old have also been arbitrarily terminated in order to fill their positions with younger employees.

164.   Because of this policy and practice, Plaintiff has suffered lost wages, mental anguish, emotional distress, inconvenience, and loss of enjoyment of life.

165.   It has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

### ELEVENTH CLAIM FOR RELIEF

**Violation of the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963 ("EPA"), 29 U.S.C.A §§ 206, et seq.**

166.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein, and incorporates the same herein by reference.

167.   Defendant discriminated against Plaintiff by providing her with lower pay than her similarly-situated male colleague in the Human Resources Department on the basis of her gender (female), even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility of her male counterpart.

168.   Upon information and belief, Plaintiff's starting salary with Defendant was $15.00 per hour, whereas her male counterpart's starting salary was $20.00 per hour.

169.   The differential in pay between Plaintiff and her male counterpart was not due to seniority, merit, quantity, or quality of production, or a factor other than sex, but was due to gender.

170.   Upon information and belief, Plaintiff has superior human resource experience than her male counterpart, Frank Consiglio.

171.   Plaintiff and Mr. Consiglio performed similar job duties and functions in the Human



19

1   Resources Department that required equal skill, effort, and responsibility, and were performing under

2   similar working conditions.

3       172.    Upon information and belief, Mr. Consiglio did not have any previous human resource

4   experience prior to starting employment in the Human Resources Department with Defendant,

5   whereas Plaintiff actually had an abundance of previous human resource experience.

6       173.    Defendant willfully caused, attempted to cause, contributed to, or caused the

7   continuation of wage rate discrimination based on gender, in violation of the EPA.

8       174.    As a result of Defendant's conduct as alleged in this Complaint, Plaintiff has suffered

9   lost wages, mental anguish, emotional distress, inconvenience, and loss of enjoyment of life.

10      175.    By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable

11  remedies available for violations of the EPA, including liquidated damages for all willful violations,

12  prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

13      176.    It has been necessary for Plaintiff to retain the services of attorneys and she is entitled

14  to reasonable costs and attorneys' fees under 29 U.S.C. § 216(b).

15  **DEMAND FOR JURY TRIAL**

16      177.    Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff

17  invokes her right to trial by jury in this civil action.

18  **PRAYER FOR RELIEF**

19      WHEREFORE, Plaintiff prays for judgment against Defendant, and each of them, as follows:

20      1.    For a judgment in favor of Plaintiff against Defendant, and each of them, on the

21  complaint and all claims for relief asserted therein;

22      2.    For an award of economic damages in an amount sufficient to make Plaintiff whole for

23  past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from

24  Defendant' conduct;

25      3.    For an award of compensatory damages from mental anguish, emotional distress, pain

26  and suffering, humiliation, harm to reputation and other losses incurred by Plaintiff as a result of

27  Defendant's conduct;

28      4.    For an award of prejudgment and post-judgment interest;



5.      For an award of punitive damages;

6.      For an award of Plaintiff's cost of suit incurred herein; and

7.      For an award of attorney's fees and related expenses pursuant to § 706(k) of Title VII, 42 U.S.C. § 2000e-5(k) and other corresponding federal law.

8.      For an award of such other relief the Court may deem just and proper.

DATED this 22nd day of November, 2016.

Respectfully submitted,

**MAIER GUTIERREZ AYON**


 /s/ Danielle J. Barraza
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff Lisa Marie Bailey*



21