JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
**MAIER GUTIERREZ AYON**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone:  702.629.7900
Facsimile:  702.629.7925
E-mail:      jag@mgalaw.com
             djb@mgalaw.com

*Attorneys for Plaintiff Lisa Marie Bailey*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LISA MARIE BAILEY, individually, | Case No.: 2:16-cv-02684-JAD-VCF |
| Plaintiff, | |
| vs. | **PLAINTIFF LISA MARIE BAILEY'S OPPOSITION TO MOTION TO COMPEL ARBITRATION** |
| AFFINITYLIFESTYLES.COM, INC. d/b/a REAL ALKALIZED WATER, a Nevada corporation; DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive, | |
| Defendants. | |

Plaintiff, Lisa Marie Bailey ("Plaintiff"), by and through her counsel of record, the law firm MAIER GUTIERREZ AYON, hereby files this opposition ("Opposition") to Defendant Affinitylifestyles.com, Inc. d/b/a Real Alkalized Water ("Defendant")'s motion to compel arbitration (ECF No. 17).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



1

1    This Opposition is made and based upon the following memorandum of points and authorities,

2  the pleadings and papers on file herein, and any oral argument at the time of the hearing.

3    DATED this 24th day of April, 2017.

4                                             Respectfully submitted,

5                                             MAIER GUTIERREZ AYON

6

7                                              _/s/ Danielle J. Barraza_____
                                              JOSEPH A. GUTIERREZ, ESQ.
8                                             Nevada Bar No. 9046
                                              DANIELLE J. BARRAZA, ESQ.
9                                             Nevada Bar No. 13822
                                              8816 Spanish Ridge Avenue
10                                            Las Vegas, Nevada 89148
                                              *Attorneys for Plaintiff Lisa Marie Bailey*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

During her employment at Defendant's business, Plaintiff was immediately and repeatedly pressured into participating in Scientology-themed programs at work.  Defendant further conditioned employee raises on completion of these programs, and thereby deprived Plaintiff of equal compensation because her religious beliefs differed from those of the company and its leadership.  Defendant also refused to accommodate Plaintiff's disability, arbitrarily forcing her to supply a doctor's note every three days and invading her privacy by inquiring as to what her diagnosis was, all while demanding that she provide her company passwords while she was out on medical leave.

When Plaintiff continually refused to subject herself to unwelcome and unrelated religious propaganda, she was ostracized by her coworkers and eventually terminated with no legitimate reason while she was taking her legitimate medical leave, only to be replaced by someone significantly younger than her.  Defendant therefore violated Plaintiff's right to a workplace free of religious and disability discrimination, and subjected Plaintiff to diminished work conditions and lesser pay than her male counterpart, along with discriminating against Plaintiff based on her age.

Now, with this case having been in litigation since November of 2016, and with just a little over two months of discovery remaining, Defendant is asking this Court to compel arbitration, and therefore deprive Plaintiff of the opportunity to vindicate her rights in court.  Defendant's Motion to Compel Arbitration (ECF No. 17) ("the Motion") is based on an employment agreement Plaintiff appears to have signed on her first day of work, dated April 4, 2016 ("the Employment Agreement").

The Motion is merely an attempt to hide the company's abhorrent policies from public scrutiny, and to force Plaintiff to incur additional costs so as to deter litigation entirely.  This motive is even more evident considering the fact that Defendant has already conceded through its Answer (ECF No. 9) that this Court has both proper jurisdiction and venue to entertain this matter, which Plaintiff relied upon for strategy and planning purposes.  Defendant must not be allowed to back out of its prior statements and cloak its actions in private arbitration.  It appears that Defendant's only justification for filing a motion now is because a Court issued a ruling in yet another religious discrimination case against Defendant compelling arbitration, but Defendant never waived its right to

3

1   arbitration in that case like it has clearly done in this case, which is crucial and precludes this Court

2   from granting Defendant's motion.

3        Moreover, the arbitration clauses which were buried in the Employment Agreement are not

4   enforceable for at least two reasons: (i) the arbitration clauses are procedurally and substantively

5   unconscionable, and (ii) the arbitration clauses are void and unenforceable under NRS 597.995, which

6   requires any such provision to be separately authorized from the rest of the agreement.  Therefore,

7   this Court should deny the Motion because there is not a valid and enforceable agreement to arbitrate,

8   and Plaintiff did not affirmatively relinquish her right to redress through the courts.

9        Additionally, although arbitration is improper, if the Court is inclined to compel arbitration,

10  Plaintiff requests a declaration of whether Plaintiff may be required to pay any portion of the costs

11  associated with arbitration or mediation, as the Ninth Circuit has held that an agreement imposing

12  such costs on an employee is so unfair as to be substantively unconscionable.

13  **II.      LEGAL ARGUMENT**

14        **A.      LEGAL STANDARD**

15        Normal grounds in law or equity which would render a contract unenforceable will apply to

16  have the same effect on an arbitration agreement.  9 U.S.C. § 2.  A court cannot compel arbitration if

17  it finds there is no enforceable agreement to arbitrate.  NRS 38.221(1)(b). "[A]rbitration is simply a

18  matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—

19  that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514

20  U.S. 938, 943 (1995).  Evaluation of an arbitration agreement's validity must therefore be considered

21  under contract law of the state wherein the employee was employed. *See Circuit City Stores, Inc. v.*

22  *Mantor*, 335 F.3d 1101, 1105 (9th Cir. 2003).[1]

23        "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court,

24  there should be an express, unequivocal agreement to that effect." *Samson v. NAMA Holdings,*

25

26  ───────────────

27  [1] Nevada applies the same standards as California in determining the enforceability of an arbitration agreement. *See D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162–63 (Nev. 2004).  Therefore, Ninth Circuit case law which is based on California state law is equally applicable as if it were based on Nevada law.

28

MAIER GUTIERREZ AYON
ATTORNEYS AT LAW

*LLC*, 637 F.3d 915, 923 (9th Cir. 2011) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Company, Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)).  Therefore, and in accordance with Nevada law, a district court considering a request to preclude a litigant from the use of the judicial system must first determine whether a valid agreement to arbitrate exists.  *See id.*

"The right to arbitration, like any other contract right, can be waived." U*nited States v. Park Place Assocs., Ltd.,* 563 F.3d 907, 921 (9th Cir. 2009).  Under the Ninth Circuit, to demonstrate waiver of the right to arbitrate, a party must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.  *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

As will be explained herein, ***there is no enforceable agreement*** to arbitrate between these parties, and even if there were, Defendant has already waived any conceivable right to compel this case to arbitration, so the Motion should be denied.

**B.     DEFENDANT HAS ALREADY WAIVED ANY RIGHT TO ARBITRATION**

Defendant's motion to compel has come as a complete surprise because Defendant has already openly conceded that this Court has proper jurisdiction and venue to adjudicate the merits of this case. In its Answer to Plaintiff's complaint, Defendant admitted the following:

1.  Responding to Paragraph 1 of Plaintiff's Complaint, Defendant admits this action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., ***and that the Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. 1331***, but denies any wrongdoing or violations of these laws.

2.  Responding to Paragraph 2 of Plaintiff's Complaint, ***Defendant admits that venue is proper in this judicial district***, but denies any acts or omissions giving rise to any claims.

*See* ECF No. 9 at p. 1 (emphasis added).  Moreover, none of Defendant's affirmative defenses makes any mention of the case needing to be dismissed due to a binding arbitration agreement.  *Id.*

In fact, Defendant displayed its assent to having this matter heard in Court over and over by



actively participating in discovery <u>right away</u> through noticing various depositions, such as the depositions of Plaintiff's former employers Wells Fargo and AppleOne, as well as the deposition of the custodian of records of Urgent Care Extra and the Nevada Equal Rights Commission.  *See* **Exhibit 1**, Notice of Taking Deposition of Custodian of Records of Wells Fargo, National Association; **Exhibit 2**, Notice of Taking Deposition of Custodian of Records of Urgent Care Extra – Tropicana & Jones, LLC; **Exhibit 3**, Notice of Taking Deposition of Custodian of Records of Nevada Equal Rights Commission; **Exhibit 4**, Notice of Taking Deposition of Custodian of Records of Howroyd-Wright Employment Agency, Inc. dba AppleOne.

Defendant also issued written discovery requests to Plaintiff – another sign that Defendant had no problems with participating in the discovery process under the rules of the District of Nevada instead of under any arbitration program. *See* **Exhibit 5**, Defendant's First Set of Interrogatories to Plaintiff; **Exhibit 6**, Defendant's First Set of Requests for Production of Documents to Plaintiff.

Even more telling is the fact that Defendant actively participated in the Early Neutral Evaluation in this case on March 6, 2017, after first requesting and receiving Plaintiff's permission to stipulate to continuing the ENE from its original date not because of any notions that this case should be in arbitration, but because Defendant's counsel had a scheduling conflict.  *See* ECF No. 15, Order Granting Stipulation to Continue the ENE.

Accordingly, Defendant's complete 180 degree reversal on its earlier statements and actions on this issue have literally come out of nowhere, and it appears that the only "justification" for Defendant filing a motion at this late stage of discovery is because it recently prevailed on a separate motion to compel arbitration in a completely separate matter that has not been consolidated with this case.  *See Echevarria-Hernandez v. AffinityLifeStyles.Com, Inc*. 2017 U.S. Dist. LEXIS 45445, Case No. 2:16-cv-00943-GMN-VCF (D. Nev. March 27, 2017).  As such, Defendant appears to be under the impression that it can simply "piggy-back" off of that ruling and that it should automatically apply to this case, but such an argument is nonsensical, especially when considering the different procedural postures between the *Echevarria-Hernandez* case and the instant *Bailey* case at the time each respective motion to compel arbitration was filed.

First, Defendant never even filed an Answer in the *Echevarria-Hernandez* case, opting to



1   <u>immediately</u> file a motion to compel arbitration in its responsive pleading less than one month after

2   Plaintiff filed her Complaint in that matter.  As such, Plaintiff was on ample notice from the very

3   beginning that Defendant believed the matter fell under the scope of an arbitration agreement and that

4   Plaintiff was not allowed to litigate her claims in Court.

5   　　　Further, as noted in the "Statement Regarding Exemption from Early Neutral Evaluation" in

6   the *Echevarria-Hernandez* matter (ECF No. 13), Defendant actually <u>refused</u> to participate in an Early

7   Neutral Evaluation specifically because it did not want to waste the Court's resources because "this

8   Complaint should never have been filed in district court due to the arbitration agreement." *See* **Exhibit**

9   **7**, Defendant's Statement Regarding Exemption from ENE in the *Echevarria-Hernandez* Matter.

10   　　　The fact that Defendant refused to conduct itself in the same manner in this case is telling, and

11   Plaintiff relied upon those differences and the lack of any indication that Defendant wanted to bring

12   this matter to arbitration in planning for discovery and participating in the ENE in good faith.  This is

13   a clear-cut case of a defendant waiving any hypothetical right to arbitration that may have existed,

14   and Plaintiff requests that the Court deny the egregiously untimely motion in its entirety pursuant to

15   the three *Fisher* standards detailed above.  *Fisher*, 791 F.2d 691 (9th Cir. 1986).

16   　　　As for the first factor, knowledge of an existing right to arbitration, Defendant arguably was

17   on notice of an existing right to arbitration from the inception of this case, as this case was not initiated

18   until November 22, 2016, which is well after the *Echevarria-Hernandez* matter (which was initiated

19   in April of 2016) was already deep in discovery, and therefore beyond the date that Defendant had

20   filed its motion to compel arbitration in the *Echevarria-Hernandez* matter in May of 2016.  Thus,

21   Defendant has no valid argument that it wasn't on notice of an employment agreement with an

22   arbitration clause at the start of this case, as it had already been involved in another matter and set

23   forth that same argument before Plaintiff even filed her Complaint.

24   　　　Even giving Defendant the benefit of the doubt and assuming that it had a memory lapse that

25   prevented it from either remembering that its employment agreements contain arbitration provisions

26   or that this specific Plaintiff consented to the arbitration provision, Defendant was undisputedly on

27   notice from at least  March 2, 2017 (the date it finally disclosed its initial documents in this case) that

28   there was an employment agreement with an arbitration provision, as that is when the employment

agreement was produced.  Plaintiff sat on this disclosure for over a month, again giving Plaintiff no notice that it was planning on seeking to enforce any kind of arbitration provision that Plaintiff may have signed, and is only now bringing forth the instant motion because of the *Echevarria-Hernandez* ruling, all while blatantly ignoring all of the signs that it has given to Plaintiff (and the Court) that it has no issues with litigating this matter in a judicial forum.

As for the second *Fisher* factor, acts inconsistent with that existing right, it cannot be stressed enough just how inconsistently Defendant has acted with any supposed right he has to send this case to arbitration.  Defendant filed an Answer without asserting any affirmative defenses related to a desire to arbitrate Plaintiff's claims.  Defendant's Answer actually conceded that this Court has proper jurisdiction and venue to address Plaintiff's Complaint.  Defendant has gone through over half the entire discovery period, including noticing its own depositions and written discovery requests to Plaintiff, without ever mentioning any desire to dismiss the case and compel arbitration.  Defendant even attended the Early Neutral Evaluation (which is only required for cases properly before the District of Nevada), again without mentioning that it felt this case should be in arbitration.

There is an abundance of legal authority that suggests Defendant's decision to actively litigate this matter is indicative of a waiver of its arbitration rights (should it have any), which goes hand in hand with the third *Fisher* factor, prejudice to the party opposing arbitration due to the inconsistent acts.  *See Van Ness Townhouses v. Mar Indus. Corp*., 862 F.2d 754, 759 (9th Cir. 1988) (the Ninth Circuit found a waiver because "Shearson chose instead to litigate actively the entire matter— including pleadings, motions, and approving a pre-trial conference order—and did not move to compel arbitration until more than two years after the appellants brought the action.").  *See e.g.*, *Kelly*, 552 Fed.Appx. at 664 (finding prejudice when the defendants waited eleven months to compel arbitration); *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949, 951 n. 7 (1st Cir. 2014) (finding prejudice with a nine-month delay after the filing of the complaint); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 454–55 (3d Cir. 2011) (holding that a ten-month delay before moving to compel, while not dispositive, weighed in favor of waiver); *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1051 (8th Cir.2016) (finding prejudice after an eight month delay); *and In re Mirant*, 613 F.3d at 591 (considering litigation expenses in prejudice inquiry after defendant waited 18 months

before moving to compel arbitration).

Expanding on the prejudice factor, this case is strikingly similar to *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 838 F. Supp. 2d 967, 979 (C.D. Cal. 2012), in which a defendant irrationally encouraged plaintiffs to pursue litigation before seeking to compel arbitration:

> By failing to assert a right to compel arbitration until now, Toyota has encouraged Plaintiffs to pursue their current litigation strategy, including pursuing their claims on a class-wide basis in a federal forum. Arbitration and litigation differ so much in form and procedure that the substance of a competent advocate's everyday decisions are necessarily shaped by and based on the method of adjudication. Litigation provides greater discovery, but at a much greater cost. Arbitration provides a more speedy resolution of an individual's claim, but lacks the efficiencies occasioned by class treatment of claims. ***Because Plaintiffs have been permitted to continue on their present path of class-wide litigation for so long, they would be prejudiced if their claims were required to be submitted to arbitration now***.

> As detailed above, class counsel have expended enormous amounts of resources in providing and reviewing discovery and engaging in motions practice before the Court and the Special Masters. They have engaged the services of experts. They have sought substantial third-party discovery. ***In the absence of an indication of an intent to compel arbitration, they have expended thousands of attorney hours prosecuting the present litigation in its present form. These activities would not have occurred in an individual arbitration.*** They represent not only expenditures of money, but also expenditures of the valuable commodity of class counsel's time.

*Id.* (emphasis added).

The reality here is Plaintiff has planned out her entire litigation strategy and discovery methods based on Defendant's undisputed indications that this case is properly before the Court and not suitable for arbitration. The case is simply far too along for the Court to equitably grant Defendant's motion at this late stage, with only two months of discovery remaining. *See Martin v. Yasuda*, 829 F.3d 1118, 1127 (9th Cir. 2016) ("When a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel, the party is indeed prejudiced."). Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion on the grounds of waiver, even if it determines that there is a valid arbitration agreement.

/ / /

**C.**    **DEFENDANT'S ARBITRATION AGREEMENT IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE**

An "express, unequivocal agreement" to arbitrate does not exist here and therefore this Court should deny Defendant's motion.  The Motion summarily states that (1) Plaintiff agreed, in a signed writing, to an Employment Agreement, and (2) [Plaintiff's] claims are clearly encompassed by the arbitration provisions of the Employment Agreement.  ECF No. 17 at 2-3.  However, Plaintiff disputes that the arbitration clauses are valid or enforceable, as they are unconscionable under Nevada state law.

Because unconscionability is a generally applicable defense to contracts, this Court may refuse to enforce an unconscionable arbitration agreement.  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170–71 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).  Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Id.* at 1170; *see also D.R. Horton, Inc. v. Green*, 96 P.3d 1159 (Nev. 2004) (dictating the same standard under Nevada law).

Thus, a contract to arbitrate is unenforceable under the doctrine of unconscionability when there is "both a procedural and substantive element of unconscionability."  *Ingle*, 328 F.3d at 1170.  Procedural and substantive unconscionability "need not be present in the same degree."  *Id.*  The more substantively oppressive the agreement, the less evidence of procedural unconscionability is required to conclude that the agreement is unenforceable, and vice versa.  *Id.* at 1171.

**1.**    **Defendant's arbitration agreement is procedurally unconscionable because of its adhesive nature**

First, the arbitration agreement is procedurally unconscionable because Plaintiff was given no meaningful opportunity to negotiate out of binding arbitration, and because the contract did not put Plaintiff on notice of the substantial rights she would be giving up or the price she may be required to pay to pursue arbitration.

*a)    Meaningful opportunity to negotiate*

To determine whether the arbitration agreement is procedurally unconscionable the court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that

1 | time." *Ingle*, 328 F.3d at 1171. A contract is procedurally unconscionable if an inequality of

2 | bargaining power between the parties precludes the weaker party from enjoying a meaningful

3 | opportunity to negotiate and choose the terms of the contract. *Id.* Procedural unconscionability can

4 | also manifest because the clause and its effects are not readily ascertainable upon a review of the

5 | contract. *D.R. Horton*, 96 P.3d at 1162.

6 |      In *Ingle*, the Court held that Circuit City possessed considerably more bargaining power than

7 | nearly all of its employees or applicants, and drafted the contract which it used as its standard

8 | arbitration agreement for all new employees. *Ingle* at 1171. Furthermore, "[t]he agreement is a

9 | prerequisite to employment, and job applicants are not permitted to modify the agreement's terms—

10 | they must take the contract or leave it." *Id.* (quoting *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889,

11 | 893 (9th Cir.2002)). Because of the stark inequality of bargaining power between Ingle and Circuit

12 | City, the court concluded that Circuit City's arbitration agreement was procedurally oppressive, and

13 | therefore unconscionable. *Id.* at 1171–72 (citing instances of state courts finding procedural

14 | unconscionability when an arbitration clause was part of a contract of adhesion in which the employee

15 | was presented with an employment contract on a "take it or leave it" basis)).

16 |      The *Ingle* court further clarified that Circuit City had no effective counterargument to a finding

17 | of procedural unconscionability. *Id.* at 1172. The Ninth Circuit explicitly held that the amount of

18 | time an employee has to consider a contract (even as much as three days) is irrelevant, and that the

19 | availability of other options does not bear on whether a contract is procedurally unconscionable. *Id.*

20 | Circuit City was not even allowed to invoke holdings from cases dealing with similar employees for

21 | the same company, unless it was able to show that Ingle was provided a ***meaningful opportunity to***

22 | ***negotiate***. *Id.* Because Ingle had no such opportunity, the arbitration clause was procedurally

23 | unconscionable.

24 |      Here, the facts are essentially the same as those in *Ingle*. Defendant drafted the Employment

25 | Agreement itself, and used it as its standard employment agreement for all of its employees.

26 | Defendant possessed 100% of the bargaining power, as the Employment Agreement was a "take it or

27 | leave it" offer. Moreover, Defendant admits that the Employment Agreement was "a condition of

28 | [Plaintiff's] employment with Real Water"—that is, her employment was contingent upon signing the



Employment Agreement including arbitration clauses, and Plaintiff was not permitted to modify the terms. *See* ECF No. 17 at p. 2. A stark inequality of bargaining power thus existed between Defendant and Plaintiff.

Additionally, just as in *Ingle*, Defendant's likely defense that Plaintiff was given an alternative option to arbitration has no bearing on the procedural unconscionability of the Employment Agreement. Defendant will no doubt champion paragraph thirteen of the employment agreement, which appears to allow an employee to "select" whether she (A) agrees to resolve Title VII claims by binding arbitration, or (B) agrees to resolve all such claims by the remedies specified by law, including recourse to the courts, but which would be subject to "a comprehensive post-dispute arbitration agreement" for any Title VII claim "so that it would be resolved by binding arbitration in the same manner specified for the non-Title VII Claims … and so that any and all disputes would be resolved in a single, non-judicial forum." *See* Employment Agreement at ¶ 13 (attached to ECF No. 17 as Ex. A).

Not only has the Ninth Circuit explicitly stated that such an option does not render the agreement fair, but option (B) is clearly an illusory choice, as it results in all disputes being resolved in the same forum regardless of the employee's "selection." For this reason alone, the Employment Agreement is so misleading and procedurally unfair that this element would be met regardless of its adhesive nature.

Plaintiff also anticipates that Defendant may argue that Nevada law does not recognize the adhesion theory when analyzing the validity of arbitration agreements. *See Kindred v. Second Judicial Dist. Court*, 996 P.2d 903, 907 (Nev. 2000). However, the Nevada Supreme Court has recently moved away from that line of thinking and indicated that the adhesive nature of employment agreements should be considered when analyzing procedural unconscionability. *See Henderson v. Watson*, No. 64545, 2015 WL 2092073, at *2 (Nev. Apr. 29, 2015) (unpub. disp.) ("While the fact that the contract is an employment agreement lends some credence to the idea that the contract is a contract of adhesion, and thus procedurally unconscionable, respondent did not present any evidence other than his own statement that he was unable to negotiate the contract."). Thus, Plaintiff rejects any attempt by Defendant to ask this Court to disregard the blatantly adhesive and unfair nature of the arbitration

1    agreement.

2                    *b)*        *Lack of notice of abandoned rights*

3            Additionally, procedural unconscionability can be evidenced by the element of surprise, or

4    "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed

5    form drafted by the party seeking to enforce the disputed terms." *Ingle* at 1171 (quoting *Stirlen v.*

6    *Supercuts, Inc.*, 51 Cal.App. 4th 1519, 1532 (1997)).  The Nevada Supreme Court has found tactics

7    such as "the use of fine print or complicated, incomplete or misleading language that fails to inform

8    a reasonable person of the contractual language's consequences" to be evidence of procedural

9    unconscionability.  *D.R. Horton*, P.3d at 1162.

10            In *D.R. Horton*, an arbitration clause in a contract for the purchase of a home was found

11    procedurally unconscionable, even where the parties each held bargaining power, due to the

12    inconspicuous appearance of the arbitration clause and the lack of explanation of the arbitration

13    clause's full effect.  *Id.* at 1163–65.  Although the court found that the entire agreement was not one

14    of adhesion, and the purchasers in fact could have negotiated for the removal of the arbitration

15    provision, the agreement was nonetheless procedurally unconscionable because:

16           ▪   (i) The entire contract was difficult to read;

17           ▪   (ii) The arbitration clause was on the second page of the two-page agreement;

18           ▪   (iii) The heading of the arbitration clause was identical to all other provisions;

19           ▪   (iv) The text of the arbitration clause was in a small font and inconspicuous;

20           ▪   (v) Horton's agent represented to the purchaser that the provisions were standard,

21                   leading the purchasers to believe the clause was simply a formality that did not

22                   significantly affect their rights; and

23           ▪   (vi) Even if any homebuyer did notice and read the arbitration provision, they would

24                   not be put on notice that they were agreeing to forgo important rights under state law,

25                   such as the right to a jury trial and the possibility of recovering attorney fees or other

26                   damages caused by a construction defect under NRS chapter 40.

27    *Id.* at 1164.

28            Just as in *D.R. Horton*, the arbitration clauses of Defendant's Employment Agreement are

procedurally unconscionable due to the element of surprise:

- (i) The Employment Agreement is overall difficult to read, including citations to the California Labor Code;

- (ii) The arbitration clauses are on page six of an eight-page agreement;

- (iii) The arbitration clauses have no heading announcing the topic;

- (iv) The arbitration clauses are not in any unique font.  Rather, when other paragraphs are in all capital letters, the arbitration clauses are in the same relatively small and inconspicuous font of the vast majority of the Employment Agreement;

-  (v) Plaintiff was given no direction to by Defendant's employees or managers, but rather she was just instructed to initial every paragraph and sign the last page;

- (vi) Perhaps most importantly, even if Plaintiff did see that the eight-page Employment Agreement contained an arbitration provision somewhere in the middle, the clauses are written in such a manner that a reasonable employee would not be put on notice that she was agreeing to forgo her important rights under Title VII and state law protecting her from religious discrimination.  Similar to NRS Chapter 40 in the *D.R. Horton* case, Title VII confers a right to jury trial, and allows a prevailing plaintiff to recover litigation costs, as well as back pay, front pay, compensatory damages, and punitive damages.   Although the Employment Agreement briefly mentions that Plaintiff will be giving up her right to have a judge or jury decide her complaints, there is no mention that Plaintiff will also be giving up her right to initiate an action without paying an exorbitant amount up front in arbitration costs, which can only potentially be recovered if she is successful at the arbitration, and therefore the Employment Agreement subjects Plaintiff to undue surprise of the true effect of the contract;

Thus, just as in *D.R. Horton*, the arbitration clauses of the Employment Agreement are procedurally unconscionable.  Plaintiff had no meaningful opportunity to negotiate the terms, and the arbitration clauses do not clearly communicate all of the rights Plaintiff was abandoning.  Therefore, the arbitration clauses are extremely procedurally unconscionable, and must not be enforced if even a small level of substantive unconscionability exists.

**2.**      **Defendant's arbitration clauses are substantively unconscionable because the terms are one-sided and favor Defendant**

The Employment Agreement is also so one-sided as to be substantively unconscionable, because Plaintiff gains no legitimate benefit from the arbitration clauses while Defendant avoids costly litigation and negative publicity for claims which an employee has a legal right to raise in a court of law.  Therefore, the arbitration clauses are wholly unconscionable, and must not be enforced.

Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience."  *Ingle*, 328 F.3d at 1172–73.  Specific to arbitration agreements, "the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.'"  *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003).  After examining the effect of such contracts between employers and employees, the Ninth Circuit has declared that a contract to arbitrate between an employer and an employee "raises ***a rebuttable presumption of substantive unconscionability***."  *Id.* (emphasis added).  Accordingly, an employer seeking to avoid a finding of substantive unconscionability bears the burden of demonstrating that an arbitration clause is bilateral with respect to a particular employee.  *Id.*  Defendant cannot show that Plaintiff gained any benefit from the arbitration clauses in the Employment Agreement.

       *a)*      *Defendant Has Already Indicated it Does Not Consider itself Bound to Certain Portions of the Arbitration Agreement*

As discussed in further detail below, the Arbitration Agreement includes language which states that the parties agree to pursue any differences in mediation and that a "party's request or petition for mediation must be in writing and must be submitted to the other party within ninety (90) days following the event giving rise to the dispute," and only after <u>that</u> request fails to result in a settlement do the parties have a right to seek arbitration.  *See* Employment Agreement at p. 5.

Defendant <u>never</u> attempted to seek a resolution through mediation and is instead attempting to go straight to arbitration outside of the ninety day period that the parties specifically contracted to in the Employment Agreement.  The Court should not condone Defendant's attempt to enforce certain provisions of the Arbitration Agreement while it has already shown it fully intends on blatantly ignoring any sections of that same agreement that it does not feel like abiding by.  Thus, because

1    Defendant has proven the terms are not in fact bilateral, Plaintiff argues that the agreement is

2    substantively unconscionable.

3                    b)      *Limitations Period*

4          Furthermore, the *Ingle* court found that the arbitration agreement in that case was substantively

5    unconscionable for imposing a "strict one year statute of limitations on arbitrating claims."  Circuit

6    City's employment agreement required that an employee must request arbitration within one year of

7    the date of the facts giving rise to his claim.  *Ingle* at 1175.  While the statute of limitations for the

8    relevant California state-law claim[2] was similarly one year, the Ninth Circuit found that this

9    requirement deprived an employee of the "continuing violation doctrine" normally available to toll

10   the statute of limitations, and thus unfairly insulated the employer from damages, while conferring no

11   benefit on the employee.  *Id.*  This unilateral restriction is substantively unconscionable.  *Id.*

12         Similarly here, the Employment Agreement has an extremely strict limitations period veiled

13   in a previous paragraph.  First, both arbitration clauses contain the condition that arbitration is only

14   available if the employee has first participated in mediation.  *See* Employment Agreement ¶ 12 (". . .

15   if the best efforts of the parties to mediate a resolution do not result in a settlement of our differences,

16   then [any non-Title VII claim] shall be resolved by binding arbitration pursuant applicable [sic] law.");

17   *Id.* ¶ 13 ("If the best efforts of the parties to mediate a resolution of any claim based on [Title VII] do

18   not result in a settlement of our differences, then . . . I agree that any and all Title VII Claims shall be

19   resolved by binding arbitration in the same manner specified for Non-Title VII Claims in paragraph

20   12 above . . . .").

21         Second, this required arbitration is explained in detail in paragraph eleven, which dictates the

22   terms of the mediation to which the parties must submit prior to further resolution of any type of

23   employment dispute, stating:

24         [A]ny controversy, dispute or claim between Company and myself out of and/or
           involving this Agreement and/or any other aspect of our employment relationship
25         . . . ***shall first be submitted*** for resolution by mediation through a Charter
           Committee (e.g., Charter Committee of Los Angeles) or other mediator to be agreed
26

27   _____

28   [2] In *Ingle*, the employee sought claims under the California Fair Employment and Housing Act
     (FEHA).  *See Ingle* at 1169.



upon by the parties.

Employment Agreement ¶ 11 (emphasis added).  While this provision may seem to be an innocuous attempt to resolve disputes inexpensively before going through arbitration, the insidious reality is that the agreement imposes an unreasonably strict limitations period on any employee complaint: "A party's request or petition for mediation must be in writing and must be submitted to the other party ***within ninety (90) days following the event giving rise to the dispute***." *Id.* (emphasis added).

This ninety-day limitations period is one half of the minimum period an employee is given to file a discrimination charge with the EEOC—180 days from the day the discrimination took place— and less than one third of the period given if a state or local agency enforces a law that prohibits discrimination on the same basis (which would apply in Nevada[3]).  *See* 42 U.S.C. § 2000e-5(e). Additionally, a Title VII complaint may be subject to equitable doctrines such as tolling or estoppel which may extend the limitations period from the last act of discrimination.  *See, e.g. National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 120–21 (2002).  However, no such equitable tolling is available under the Employment Agreement.

Therefore, just as in *Ingle*, Defendant has imposed an unreasonable limitations period on employee complaints.  Where the *Ingle* court found substantive unconscionability merely from the lack of recognition of equitable tolling, the Employment Agreement here goes above and beyond such a restriction, by also cutting the amount of time an employee would be able to begin the grievance process to one-third the amount of time she would be afforded to file a complaint with the EEOC.

Because Defendant's mediation is ***required*** before an employee is allowed to pursue arbitration of the dispute, the Employment Agreement imposes a limitations period that is significantly shorter than what would be allowed under the law, and therefore is substantively unfair and unconscionable, just as in *Ingle*.

   c)  *Fee Splitting*

Finally, an arbitration agreement's silence as to the potential costs of arbitration should be considered in examining substantive unconscionability, as ordinary consumers may not have the

---

[3] *See generally* NRS 613.310 et seq.


Maier Gutierrez Ayon
ATTORNEYS AT LAW

1     financial means of pursuing the sole legal remedy allowed under the agreement, and a failure to

2     disclose this fact lacks the requisite bilaterality discussed in *Ting*. *See D.R. Horton*, 96 P.3d at 1165.

3          In *D.R. Horton*, the Nevada Supreme Court found the contract substantively unconscionable

4     for imposing a penalty on the homebuyer if he chose to forego arbitration, but not the seller, and

5     because the agreement required each party to pay equally for the costs of arbitration. *Id.* While the

6     lack of disclosure of the cost that the homebuyer would be required to pay for arbitration does not by

7     itself render the agreement unconscionable, a court must consider the "failure to disclose potential

8     costs in examining the asymmetrical effects of the provision." *Id.*

9          Moreover, the Ninth Circuit has held that an arbitration provision requiring the parties to split

10    the cost of the arbitration would, alone, render the arbitration agreement unenforceable. *See Ingle*,

11    328 F.3d at 1177–78. The provision in *Ingle* read "each party shall pay one-half of the costs of

12    arbitration following the issuance of the arbitration award," and further stated that the arbitrator *may*

13    require the non-prevailing party to pay the other's share of costs. *Id.* The court held the provision

14    substantively unconscionable for many reasons, but stated that "[b]y itself, the fact than an employee

15    could be liable for Circuit City's share of the arbitration costs should she fail to vindicate employment-

16    related claims renders this provision substantively unconscionable." *Id.* at 1178.[4]

17          Here, as in *D.R. Horton* and *Ting v. AT&T*, the Employment Agreement contains no warning

18    that an employee seeking to vindicate her rights would be responsible to pay for potentially

19    unaffordable resolution via mediation ***and*** arbitration. First the mediation which is required by

20    paragraph eleven states in pertinent part: "The parties shall each pay at least a fair portion of such

21    mediation unless otherwise specifically prohibited by law or unless such cost-sharing would

22    reasonably act to deter Employee from pursuing any employment-related legal right." Employment

23    Agreement ¶ 11. Further, paragraph seventeen states that the prevailing party at arbitration (as

24    determined by the arbitrator) "shall be awarded reasonable attorney's fees." *Id.* ¶ 17.

25

26

27    [4] Perhaps more egregiously, because the arbitrator has *discretion* to force the non-prevailing party to

28    pay the prevailing party's costs, even a prevailing employee may still be required to pay its own costs.



Plaintiff suspects that Defendant will point to paragraph 17 of the Agreement which states that "the arbitrator is prohibited from imposing any type of fees, cost or expense upon me that I would not be required to bear if I were to bring a legal action in Court," but that does not go far enough in explicitly detailing whether Plaintiff will not have to pay for any arbitration costs whatsoever, or whether she will have to pay for at least half of the arbitration costs up front and then argue that the language in paragraph 17 to means she can recover those costs at the end of the arbitration, which is unconscionable.

In sum, the arbitration clauses which Defendant seeks to enforce are substantively unconscionable, for at least three reasons: (1) Defendant has indicated it does not seek to be bound to certain portions of the Arbitration Agreement; (2) an employee's time for beginning the resolution process is severely shortened from the window which would exist at law, and not subject to equitable tolling; and (3) an employee may be forced to bear some cost of the arbitration, including the costs of the employer, or the employee's own costs upon prevailing.  Any one of these reasons is alone sufficient to render the arbitration clauses sufficiently substantively unconscionable, and when paired with the egregious procedural unconscionability discussed above, to find them unenforceable. Therefore, Plaintiff respectfully requests that the Motion be denied.

## C.   THE ARBITRATION CLAUSES VIOLATE NRS 597.995 AND ARE THEREFORE VOID

Similarly, because the arbitration clauses are buried within a lengthy employment contract and do not require a separate specific acquiescence on the employee's part, the portions of the employment agreement which may be construed as requiring employee complaints to be submitted to arbitration instead of the judicial process are void and unenforceable under Nevada law.

NRS 597.995 states that "an agreement which includes a provision which requires a person to submit to arbitration any dispute arising between the parties to the agreement must include specific authorization for the provision which indicates that the person has affirmatively agreed to the provision."  Nev. Rev. Stat. 597.995(1).  Further, any agreement which fails to include a specific authorization "is void and unenforceable."  Nev. Rev. Stat. 597.995(2).  In other words, any clause of a contract which seeks to impose binding arbitration must be its own standalone agreement, rather than one (or two) of many paragraphs in a several-page document.



The policy for this law coincides with and explicitly codifies the procedural unconscionability jurisprudence discussed at length above. A party to a contract cannot be held to an agreement to arbitrate disputes unless there is an "express, unequivocal agreement to that effect." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011). Nevada's legislature has dictated that the particularly problematic issues with arbitration clauses justify extra precautions to ensure that the contracting party knows what she is agreeing to, and therefore a separate arbitration agreement is required.

Here, the Employment Agreement contains no separate authorization for an agreement to arbitrate all disputes. Instead, Defendant furtively placed these requirements in the middle of an eight-page document, and spaced out the various pieces which make up the agreement across seven paragraphs. *See* Employment Agreement ¶¶ 11–17. This method is directly in contravention with Nevada law, and therefore must be held "void and unenforceable." Accordingly, this Court should deny the Motion.

**D.** **PLAINTIFF MUST NOT BE REQUIRED TO PAY FOR MEDIATION AND ARBITRATION**

Although Plaintiff vehemently opposes arbitration of her disputes for the reasons enumerated above, in the event the Court is inclined to grant the Motion, Plaintiff respectfully requests that the Court's order include a declaration that Plaintiff be exempted from any payment of costs associated with the ensuing mediation and arbitration.

As was exhaustively detailed in this Opposition, the Ninth Circuit has made it exceedingly clear that an employee cannot be required to pay any part of the costs of compelled arbitration. *See, e.g. Ingle*, 328 F.3d at 1177–78. In fact, an agreement which contains even *the possibility* that an employee may be forced to bear *her own costs* upon prevailing is sufficiently unfair and one-sided to render the agreement substantively unconscionable. *See id.* Therefore, the Ninth Circuit has made clear its policy that an employee compelled to arbitration cannot be required to bear any associated costs.

Therefore, in the event Plaintiff's employment disputes are compelled to mediation and arbitration in accordance with the Employment Agreement, Plaintiff respectfully requests that this Court mandate that Defendant bear all costs of whatever mediation and arbitration it is able to impose.



To allow any other arrangement would be to encourage unfair employment practices and frustrate the purposes of arbitration (and the Federal Arbitration Act) as a cost-effective means for all parties.

## III.     CONCLUSION

The Employment Agreement is both procedurally and substantively unconscionable, for a multitude of reasons in both categories.  Further, the agreement was not created or executed in accordance with Nevada law and public policy, and even if it were, Defendant has undisputedly waived any right to arbitration based on its conduct litigating this case.  Defendant also has not set forth any legitimate argument as to why discovery should be stayed pending arbitration, so Plaintiff requests that the Court disregard that passing comment made in the motion.  Based on the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety and allow the litigation to proceed under this Court's jurisdiction.

DATED this 24th day of April, 2017.

Respectfully submitted,

**MAIER GUTIERREZ AYON**


  _/s/ Danielle J. Barraza_____
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff Lisa Marie Bailey*



1

## CERTIFICATE OF SERVICE

2      I hereby certify that on the 24th day of April, 2017, I served a true and correct copy of the

3 foregoing **PLAINTIFF LISA MARIE BAILEY'S OPPOSITION TO MOTION TO COMPEL**

4 via electronic mail and by depositing a true and correct copy of the same, enclosed in a sealed envelope

5 upon which first class postage was fully prepaid, in the U.S. Mail at Las Vegas, Nevada, addressed to

6 the following parties:

7

8
Deverie Christensen, Esq.
Philip C. Thompson, Esq.
Jackson Lewis P.C.

9
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

10
*Attorneys for Defendant Affinitylifestyles.com, Inc.*
*d/b/a Real Alkalized Water*

11

12
*/s/ Natalie Vazquez*

13
An Employee of Maier Gutierrez Ayon

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

