# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Lisa Marie Bailey, | 2:16-cv-02684-JAD-VCF |
| Plaintiff | **Order Granting Motion to Compel Arbitration** |
| v. | |
| Affinitylifestyles.com, Inc., dba Real Alkalized Water, a Nevada Corporation; Does I-X; and Roe Business Entities I-X, inclusive | [ECF No. 17] |
| Defendants | |

When Lisa Bailey started working for Affinity Lifestyles.com, Inc. dba Real Alkalized Water, she signed an employment agreement that binds her to mediate then arbitrate any employment claim against the company.[1] So when Bailey sued Affinity, alleging that it discriminated against her based on her religion, age, sex, and disability,[2] Affinity filed this motion to compel arbitration.[3] Bailey opposes the motion, arguing that: (1) Affinity has waived its right to arbitrate through its litigation conduct, (2) the arbitration clauses are procedurally and substantively unconscionable, and (3) the arbitration clauses are unenforceable under NRS 597.995.[4] But I find that the agreement is valid and enforceable and that Affinity has not waived its arbitration right. So I grant Affinity's motion to compel arbitration, dismiss Bailey's claims without prejudice, and direct the Clerk of the Court to close this case.

---

[1] ECF No. 17, Ex. A.

[2] ECF No. 1 at ¶¶ 68–109.

[3] ECF No. 17.

[4] ECF. No. 19.

**Background**

When Bailey began working for Affinity as a human resources director in 2016, she signed an employment agreement.[5]  That agreement obligates Bailey to mediate then arbitrate "any claim or dispute out of and/or involving" the agreement "or any other aspect of" the parties' "employment relationship," except for workers' compensation claims, unemployment-insurance claims, or "actions for allegedly due and unpaid wages under California Labor Code § 229."[6] Bailey initialed next to each of the arbitration provisions in the agreement, and she expressly elected that her binding-arbitration agreement include Title VII claims.[7]  Bailey also initialed next to the section stating that she had the opportunity to review the agreement, consult with an advisor, and negotiate these terms.[8]

Bailey's employment relationship with Affinity soured, and she sued.  She asserts Title VII claims based on religion, a hostile-work environment, and retaliation; a claim for violations of Nevada State employment laws; and claims for violations of the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Fair Labor Standards Act.[9]  The parties engaged in some discovery, including document requests to third parties, interrogatories, requests to produce documents, and requests for admissions.[10]  Affinity then filed this motion to compel arbitration,[11] and discovery was stayed while I considered that motion.[12]

---

[5] ECF No. 17, Ex. A.

[6] ECF No. 17-1 at 6–7.

[7] *Id.* at 7, ¶ 13A.

[8] *Id.* at 8–9.

[9] ECF No. 1.

[10] ECF No. 19, Ex. 1–3, Ex. 5–6; ECF No. 28.

[11] ECF No. 17.

[12] ECF No. 29.

2

Affinity seeks to hold Bailey to her arbitration agreement.[13]  Bailey does not deny that her claims fall within the agreement's scope, but she claims that, by participating in this litigation for several months before filing this motion to compel, Affinity waived its right to arbitrate.  She also argues that the agreement is void and unenforceable because it is procedurally and substantively unconscionable and violates NRS 597.995.[14]  I consider each argument in turn.

## Discussion

The Federal Arbitration Act states a strong preference that parties arbitrate disputes when they have a valid agreement to do so.[15]  A valid agreement requires that: (1) the parties agreed to arbitrate, (2) the claim is within the agreement's scope, and (3) the agreement is conscionable.[16]  Bailey does not deny that she agreed to arbitrate or that her claims fall within the scope of that agreement.  She attacks the agreement on the third requirement, contending that it is procedurally and substantively unconscionable and that it is void under NRS 597.995 because the arbitration provision was not authorized separately from the rest of the agreement.[17]

**A.   The agreement is not unconscionable.**

"Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a clause as unconscionable."[18]  Procedural unconscionability refers to a party's unequal bargaining power and misunderstanding

---

[13] ECF No. 17.

[14] ECF No. 19.

[15]  9 U.S.C. § 2 (2012).

[16] *Lifescan, Inc. v. Premier Diabetic Servs.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

[17] ECF No. 19.

[18] *D.R. Horton v. Green*, 96 P.3d 1159, 1162 (Nev. 2004) (quoting *Burch v. Dist. Ct.*, 49 P.3d 647, 650 (Nev. 2002)).

of the provision's effects.[19]  Substantive unconscionability focuses on whether an agreement's terms are one-sided or bilateral.[20]

### 1.     Procedural unconscionability

"An arbitration clause is procedurally unconscionable when a party has no 'meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract.'"[21]  To avoid procedural unconscionability, an arbitration provision must be conspicuous and put the signer on notice that she is giving up important legal rights.[22] Misleading or complicated language can suggest procedural unconscionability.[23]  And a party's ability to negotiate the terms of an agreement factors into a procedural-unconscionability review.[24]  For example, in *Gonski v. Second Judicial District Court*, the Nevada Supreme Court found procedurally unconscionable an arbitration clause that was typed in normal-sized font and found on page 15 of an 18-page agreement "in the midst of identically formatted paragraphs, even though" other provisions were "called out through the use of all capital letters."[25]  And although the signers initialed the bottom of the page containing the arbitration provision, "nothing drew their attention to the importance of what those pages contained."[26]

Bailey argues that she was not given a meaningful opportunity to negotiate her arbitration agreement and that she was not sufficiently on notice that she was giving up substantial rights.

---

[19] *D.R. Horton, Inc.,* 96 P.3d at 1162.

[20] *Id.* at 1162–63.

[21] *Gonski v. Second Jud. Dist. Ct.*, 245 P.3d 1164, 1169 (Nev. 2010).

[22] *Id.* at 1170.

[23] *Id.* at 1169.

[24] *Id.* at 1162.

[25] *Id*. at 1170.

[26] *Id.*

But the form and substance of the arbitration paragraphs in her employment agreement belie her claim. Although the arbitration paragraphs are typed in the same size and style of font as the rest of the agreement, paragraphs 17 and 18 read in all capital letters:

17.   I UNDERSTAND THAT IN THE EVENT OF AN ARBITRATION UNDER THIS AGREEMENT, JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING PROPER JURISDICTION. THE ARBITRATOR SHALL DETERMINE IF THERE IS A PREVAILING PARTY AND THE PREVAILING PARTY SHALL BE AWARDED REASONABLE ATTORNEY'S FEES. I UNDERSTAND HOWEVER THAT BY THIS AGREEMENT, THE ARBITRATOR IS PROHIBITED FROM IMPOSING ANY TYPE OF FEES, COST OR EXPENSE UPON ME THAT I WOULD NOT BE REQUIRED TO BEAR IF I WERE FREE TO BRING A LEGAL ACTION IN COURT. I UNDERSTAND AND ACKNOWLEDGE THAT BY AGREEING TO ARBITRATION I AM GIVING UP ANY RIGHT THAT I MAY HAVE TO A JUDGE OR JURY WITH REGARD TO ALL APPLICABLE ISSUES CONCERNING MY EMPLOYMENT, SPECIFICALLY INCLUDING TERMINATION OF EMPLOYMENT.

18.   I ACKNOWLEDGE AND AGREE THAT PRIOR TO SIGNING THIS AGREEMENT AND AGREEING TO ITS TERMS, I HAVE HAD AN OPPORTUNITY TO REVIEW THIS TEXT, CONSULT WITH AN ADVISOR OF MY CHOICE (INCLUDING MY OWN LEGAL COUNSEL), AND NEGOTIATE ON SUCH TERMS.[27]

These are the only paragraphs in the agreement that are written in all capital letters, causing them to stand out from all other provisions of the agreement. Bailey initialed next to each of them, acknowledging that she fully understood the scope of this arbitration agreement and that she had been afforded the opportunity negotiate its terms and consult with her counsel of choice about it.

The language and structure of the arbitration clauses bolster the conclusion that Bailey had and exercised choice in agreeing to the arbitration terms. For example, in paragraph 13, the agreement gave her the ability to elect to make her Title VII claims subject to binding arbitration or leave them for court. She checked the binding-arbitration option[28]:

---

[27] ECF No. 17-1 at 8–9.

[28] *Id*. at 7.

13. If the best efforts of the parties to mediate a resolution of any claim based on Title VII of the Federal Civil Rights Act of 1964 (Title VII Claims) do not result in a settlement of our differences, then, subject to Company's rights for restraining order and injunction in paragraph 10 above, the parties shall resolve such dispute one of the following manners [EMPLOYEE TO SELECT ONE OF THE TWO CHOICES BELOW AT HIS OR HER OPTION]:

_____ A. I agree that any and all Title VII Claims shall be resolved by binding arbitration in the same manner specified for Non-Title VII Claims in paragraph 12 above and elsewhere in this Agreement; or

_____ B. I agree that any and all Title VII Claims shall be resolved in the manner and by the remedies specified by law for Title VII Claims, including recourse to the courts. In the event of any Title VII Claim, the parties shall each utilize best efforts to agree to a comprehensive post-dispute arbitration agreement for such claim so that it would be resolved by binding arbitration in the same manner specified for Non-Title VII Claims in paragraph 12 above and elsewhere in this Agreement and so that any and all disputes would be resolved in a single, non-judicial forum.

Thus, Bailey's agreement is distinguishable from the one in *Gonski* because: (1) Bailey initialed next to each section to show that she read it, not just on each page; (2) the arbitration provision stands out from the other terms of the agreement; (3) the agreement contains explicit language detailing what rights she was giving up; and (4) both the form and substance of the agreement demonstrate that the contract was not one of adhesion, but of choice, and Bailey freely elected arbitration. I do not find that this agreement is procedurally unconscionable.

## 2. Substantive unconscionability

Substantive unconscionability refers to an agreement's one-sidedness.[29] Bailey argues that the agreement is one-sided because Affinity's failure to submit this dispute to mediation before arbitration shows that Affinity doesn't consider itself bound to the agreement's terms.

---

[29] *D.R. Horton, Inc.*, 96 P.3d at 1162–63.

6

1   While the agreement requires the parties to mediate before they arbitrate, Affinity moving to

2   compel arbitration does not make *the agreement's terms* one-sided.  Bailey didn't comply with

3   the mediation requirement either, and the agreement puts the mediation-arbitration process

4   obligation equally on both parties.  Regardless, Affinity's post-agreement conduct does not show

5   that the agreement's terms are themselves one-sided.

6          Bailey next contends that the agreement is substantively unconscionable because it

7   imposes an "insidious" 90-day limitations period for demanding mediation.[30]  She argues that the

8   Ninth Circuit's decision in *Ingle v. Circuit City Stores, Inc.*[31] demonstrates that this short time

9   limit renders the agreement substantively unconscionable.  But *Ingle* is materially distinguishable

10  because the Circuit City agreement contained an express claim waiver that effectively shortened

11  the period for any covered claim to one year, regardless of what the statutes of limitations for

12  those claims were.[32]  Bailey's agreement with Affinity contains no similar waiver.  And Affinity

13  is not arguing that Bailey's claims are time-barred because she did not request mediation within

14  90 days of its alleged violations; they are moving to compel her to comply with the agreed-upon

15  process.

16         Bailey then argues that a third reason that the agreement is substantively unconscionable

17  is that it may force an employee to bear some of the cost of mediation and arbitration.  She cites

18  *Ingle*, *Ting v. AT&T*,[33] and *D.R. Horton v. Green*,[34] to support her argument.

19          *Ingle* offers no true support for Bailey's position.  The *Ingle* court found that an

20  agreement's requirement that the employee and employer each pay one-half of the costs of the

21

22  [30] ECF No. 19 at 17.

23  [31] *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003).

24
25  [32] *Id*. at 1175 (quoting the provision's waiver language as: "The failure of an Associate to initiate an arbitration within the one-year time limit shall constitute a waiver with respect to that dispute

26  relative to that Associate.").

27  [33] *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003).

28  [34] *D.R. Horton,* 96 P.3d 1159.

arbitration and giving the arbitrator the discretion to "require the [employee] to pay Circuit City's share of the costs of arbitration and incidental costs" "offend[ed] basic principles of fairness" and was "harsh and unfair to employees seeking to arbitrate legal claims."[35]  For those reasons, the panel found the agreement substantively unconscionable.  But Bailey's agreement contains no similar provisions.  The mediation clause states that "The parties shall each pay at least a fair portion of such mediation unless otherwise specifically prohibited by law or unless such cost-sharing would reasonably act to deter Employee from pursuing any employment-related legal right."[36]  And although the arbitration clause allows the arbitrator to award "reasonable attorney's fees" to the prevailing party, it also says that "the arbitrator is prohibited from imposing any type of fees, cost or expense upon [employee] that [she] would not be required to bear if [she] were free to bring a legal action in court."[37]  I cannot conclude that these provisions offend basic fairness principles or are harsh and unfair to employees.

Nor does the Nevada Supreme Court's decision in *D.R. Horton, Inc. v. Green* compel the conclusion that Bailey's arbitration agreement is substantively unconscionable.  The Court found D.R. Horton's agreement substantively unconscionable for two reasons: (1) it had a one-sided $10,000 liquidated-damages provision penalizing homebuyers who forgo arbitration, but imposed no similar penalty on D.R. Horton; and (2) it required "that each party pay equally for the costs of arbitration."[38]  Although the Court acknowledged that "an arbitration agreement's silence regarding potentially significant arbitration costs does not, alone, render the agreement enforceable," it explained that "'the existence of large arbitration costs could preclude a litigant from effectively vindicating her rights in the arbitral forum.'"[39]  But Bailey's agreement contains

---

[35] *Id*. at 1178.

[36] ECF No. 17-1 at 6, ¶ 11.

[37] *Id*. at 6–7, ¶¶ 11, 17.

[38] *D.R. Horton*, 96 P.3d at 1165.

[39] *Id*. (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).

no liquidated-damages penalty and limits Bailey's arbitration costs to those she would have to pay had she brought her claim in court. For this reason, *Ting v. AT&T* —in which the Ninth Circuit invalidated an arbitration clause that imposed "a scheme [that was] unconscionable because it impose[d] on some consumers costs greater than those a complainant would bear if . . . she would file the same complaint in court"[40]—is also inapposite. I therefore find that the agreement is not substantively unconscionable.

**B.    NRS 597.995**

Bailey next argues that the agreement is void because it violates NRS 597.995, which states that "an agreement [that] includes a provision [that] requires a person to submit to arbitration any dispute arising between the parties to the agreement must include specific authorization for the provision [that] indicates that the person has affirmatively agreed to the provision."[41] Bailey interprets this statute to require that "any clause of a contract [that] seeks to impose binding arbitration must be its own standalone agreement, rather than one (or two) of many paragraphs in a several-page document."[42]

I disagree with Bailey's interpretation. The Nevada Supreme Court provided guidance on how to satisfy NRS 597.995 in *Fat Hat, LLC v. DiTerlizzi*.[43] It held that an arbitration clause inside an agreement that lacked a separate line to acknowledge the arbitration clause specifically did not comply with the statute, but an agreement that required the signers "to fill in their names and addresses in the blank spaces of the provision, explicitly stating that the agreement to arbitrate was effective" did.[44] So the statute does not require a standalone agreement, just an additional, more specific acknowledgment.

---

[40] *Ting*, 319 F.3d at 1151.

[41] NEV. REV. STAT. § 597.995 (2013).

[42] ECF No. 19 at 19.

[43] *Fat Hat, LLC v. DiTerlizzi*, 2016 WL 5800335, *2 (Sept. 21, 2016) (unpublished).

[44] *Id*.

9

1   Even if I were to find that NRS 597.995 could apply to this case and is not displaced by

2   the FAA, this agreement would satisfy the statute.  Each paragraph of the agreement—and thus

3   each individual mediation and arbitration paragraph—has a line for initials next to it, and Bailey

4   initialed each one.  And paragraph 17, in all capital letters and specifically initialed by Bailey,

5   acknowledges that she has affirmatively agreed to arbitration as NRS 597.995 requires.

6   **C.    Affinity has not waived its arbitration right by its litigation conduct.**

7   Bailey also argues that the motion to compel must be denied because, by participating in

8   this litigation thus far, Affinity has waived its right to arbitrate.  A party arguing waiver has a

9   heavy burden of proof—finding waiver of an arbitration right is not favored.[45]  The facts must be

10  viewed in a light favorable to arbitration,[46] and any doubt about the agreement should be resolved

11  in favor of waiver.[47]  A party waives its arbitration right only when: (1) it knows that it has an

12  arbitration right, (2) it acts inconsistently with that right, and (3) the other party will suffer some

13  prejudice because of those inconsistent acts.[48]  Thus, it is not enough that the party later

14  demanding arbitration has acted inconsistently with that right; the other party also must have

15  suffered prejudice as a result.

16  There is no set test for determining what actions are inconsistent with a known arbitration

17  right.[49]  Bailey argues that Affinity's jurisdictional acknowledgments in its answer, failure to

18  assert the right to arbitrate as an affirmative defense, and propounding of discovery are all

19  inconsistent with the right to arbitrate.  This may well be true.  The Ninth Circuit has found "this

20

21

22

23  [45] *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013) (citations omitted);
     *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016).

24

25  [46] *Id.*

26  [47] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

27  [48] *Fisher v. A.G. Becker Paribus, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

28  [49] *Martin*, 829 F.3d at 1125.

1   element satisfied when a party chooses to delay his right to compel arbitration by actively

2   litigating his case to take advantage of being in federal court."[50]

3          But even if Affinity has engaged in conduct inconsistent with its right to arbitrate, Bailey

4   has not shown that she was prejudiced by it.  Prejudice is found when a party being compelled to

5   arbitrate: (1) has incurred costs that it would not have if the other party compelled arbitration

6   earlier, (2) will be forced to re-litigate an issue, or (3) will be disadvantaged because the party

7   compelling arbitration has received an advantage that it would not have if it compelled

8   arbitration earlier.[51]  The party arguing waiver must show more than "self-inflicted"

9   prejudice[52]—which may include costs related to filing the complaint and initial litigation.[53]

10         Bailey claims her prejudice is that she "has planned out her entire litigation strategy and

11  discovery methods based on Defendant's undisputed indications that this case is properly before

12  the Court and not suitable for arbitration," and that this case is too far along to force her to chart a

13  new course in the arbitral forum.[54]  But this is self-inflicted prejudice.  It was Bailey who chose

14  this forum, ignoring her own arbitration agreement.  And Affinity filed its motion to compel

15  arbitration less than three months after it answered.[55]  Bailey has not demonstrated that the

16  discovery that has been conducted was a type that Affinity would not be able to obtain in

17  arbitration, and discovery has been stayed while this motion has been pending.[56]  Bailey also has

18  shown no other true advantage that Affinity has obtained by its brief litigation conduct before

19

20  _____

21  [50] *Id.*

22  [51] *Id.* at 1126–27.

23  [52] *Fisher*, 791 F.2d at 698.

24  [53] *Martin*, 829 F.3d at 1126.

25  [54] ECF No 19 at 9.

26

27  [55] *See* ECF No. 9 (1/17/17 answer); ECF No. 17 (4/10/17 motion to compel).

28  [56] ECF Nos. 21 (stipulation); 22 (order); 24 (motion to extend); 29 (order staying discovery).

filing the instant motion.  I thus find on this record that Bailey has not established that she has been prejudiced by Affinity's litigation conduct.

**D.      I dismiss this case without prejudice.**

Having found that the arbitration agreement is valid, I can either stay the case pending the arbitration or dismiss it without prejudice.[57]  Because I find that all of Bailey's claims fall within the agreement's scope, I dismiss her claims without prejudice and order the parties to arbitrate these claims in accordance with their agreement.[58]

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Affinity's motion to compel arbitration **[ECF No. 17] is GRANTED** and Bailey's claims are **DISMISSED without prejudice.**  The parties are ordered to arbitrate these claims in compliance with the arbitration agreement.[59]

The Clerk of the Court is directed to **CLOSE** this case.

DATED: November 29, 2017.

_____
U.S. District Judge Jennifer A. Dorsey

---

[57] 9 U.S.C. § 3 (2012); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

[58] Bailey also asks me to order Affinity to bear any costs associated with arbitration.  But I lack the power to do so.  I can decide only whether there is a valid and enforceable agreement and waiver; the arbitrator and the Model Rules of Arbitration Procedure determine the costs.  Accordingly, I deny Bailey's request without prejudice to her ability to raise this request before the arbitrator.

[59] ECF No. 17-1.